## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

**ROBERT LOGAN MICHAEL,**

      **Plaintiff,**

**v.**                                                                 **Case NO. 2:17-cv-04314**

**CO II DAVE GORDON; LT. NATE
KENDRICK; DAVID BALLARD; DR.
LYE; and DR. GARCIA,**

      **Defendants.**


### PROPOSED FINDINGS AND RECOMMENDATIONS

On November 11, 2017, Plaintiff Robert Logan Michael filed a *pro se* complaint against the defendants under 42 U.S.C. § 1983. (ECF No. 3). Currently pending are Drs. Lye and Garcia's motion to dismiss, (ECF No. 19); Nate Kendrick's motion to dismiss or, in the alternative, motion for summary judgment, (ECF No. 21); David Ballard and Dave Gordon's motion to join Nate Kendrick's motion, (ECF No. 31); and Plaintiff's motion to deny Defendants' motion to dismiss, (ECF No. 32). This matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and by standing order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having thoroughly reviewed the complaint, the undersigned **FINDS** that Plaintiff has failed to exhaust his administrative remedies against all of the defendants and additionally has failed to state a claim upon which relief may be granted against Defendants Lye and Garcia. Therefore, the undersigned

respectfully **RECOMMENDS** that the presiding District Judge **GRANT** the motions to dismiss/motion for summary judgment, (ECF Nos. 19, 21), and the motion for the remaining defendants to join in the motion to dismiss, (ECF No. 31); **DENY** Plaintiff's motion to deny the motions to dismiss, (ECF No. 32); **DISMISS** the complaint **without prejudice** as to Defendants Gordon, Kendrick, and Ballard and **with prejudice** as to Drs. Lye and Garcia; and **REMOVE** this matter from the docket of the Court.

## I.    <u>Factual and Procedural History</u>

Plaintiff is a West Virginia Division of Corrections ("WVDOC") inmate. (ECF No. 3 at 3). He alleges in a *pro se* complaint that, on November 20, 2015, he was a passenger in an inmate work crew van that was rear-ended by a hit-and-run driver. (ECF No. 3 at 4). Plaintiff states that he was injured in his "neck & back area." (*Id.*). He asserts the following specific claims against the defendants:

### A. C.O. Dave Gordon ("Gordon")

Plaintiff states that the seat belts in the van did not operate properly and faults Gordon, the correctional officer who was driving the van, for not checking the equipment and noticing the defective seatbelts, as Plaintiff states Gordon was required to do "by policy." (*Id.* at 5). Plaintiff also claims that Gordon was "negligent with proper procedures and protocols for an accident." (*Id.* at 6).

### B. Lt. Nate Kendrick ("Kendrick")

Plaintiff alleges that shift commander, Kendrick, arrived at the accident scene and told Plaintiff that he would have to wait until he returned to the prison to receive medical treatment even though the prison was approximately eight miles away and a hospital was only two miles away. (*Id.* at 5-6). Plaintiff accuses

2

Kendrick of violating Plaintiff's "Eighth Amendment right of access to medical attention." (*Id.* at 6). He further contends that Kendrick, like Gordon, was "negligent with proper procedures and protocols for an accident." (*Id.*).

**C. Dr. Lye**

Plaintiff asserts that he saw a nurse on arrival to the prison and had x-rays performed on November 23, 2015, but did not see a doctor until November 25, 2015 when he saw prison physician, Dr. Lye. (*Id.*). Plaintiff reported ongoing post-accident pain, but Dr. Lye merely responded that he "could not fix what he could not see." (*Id.*). Given that an "x-ray does not show muscle and nerve damage," Plaintiff alleges that Dr. Lye should have referred him to a specialist, ordered a MRI or CT scan, and/or treated him further. (*Id.*).

**D. Warden David Ballard ("Ballard")**

Plaintiff states that Ballard "was notified of his officer's negligence and [Plaintiff's] medical issue," but "no help or relief was ever received." (*Id.* at 7).

**E. Dr. Garcia**

Plaintiff claims that after filing "grievances on the issue," he was transferred to another prison facility on June 17, 2016, and Dr. Garcia took over his care. (*Id.*). Plaintiff states that Dr. Garcia ignored Plaintiff's complaints that he was still in pain and that ibuprofen was not helping. (*Id.*). Plaintiff contends that every time he saw Dr. Garcia, "no further treatment or recommendations were made." (*Id.*). Plaintiff states that Dr. Garcia denied him "access to healthcare staff qualified to address [his] problem," such as a MRI, CT scan, or referral to a specialist. (*Id.*).

Plaintiff seeks monetary damages in this action, including "compensatory, punitive, [and] nominal damages" in the "estimated total value of $225,000" to compensate him for, *inter alia*, his medical fees, emotional and physical distress, lost wages from his employment in the prison, and future medical expenses. (*Id.* at 5).

Defendants move for dismissal of Plaintiff's complaint on the basis that he has not exhausted his administrative remedies. (ECF No. 19, 21, 31). Additionally, Drs. Lye and Garcia contend that Plaintiff fails to state a claim upon which relief can be granted. (ECF No. 19).

## II.    <u>Standards of Review</u>

A motion to dismiss made under Federal Rule of Civil Procedure 12(b)(6) tests the legal and factual sufficiency of a complaint. *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). The complaint must assert facts that are sufficient to "raise a right to relief above the speculative level" and support a claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *See also Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009). The Supreme Court explained the "plausibility" standard in *Ashcroft v. Iqbal*, stating:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'

*Iqbal,* 1937 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 1955) (internal citations omitted). Determining whether a complaint states a facially plausible claim for relief is a "context-specific task that requires the court to draw on its judicial experience and common sense." *Iqbal,* 1937 S. Ct. at 1950 (citing *Iqbal v. Hasty,* 490 F.3d 143, 157–

158 (2nd Cir. 2007)). To survive a motion to dismiss, a complaint must plead both a factual and legal basis for relief. *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to establish a facially plausible complaint). In ruling on a motion to dismiss, the court must accept as true all of the well-pleaded factual allegations contained in the complaint. *Erickson v. Pardus,* 551 U.S. 89 (2007). However, the court is not required to accept the legitimacy of legal conclusions. *Iqbal,* 1937 S. Ct. at 1949.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when no genuine issue of material fact is in dispute, and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). A fact is material if it "might affect the outcome of the suit under the governing law," and a disputed issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson, Id.* at 248. Assertions of material facts must be supported by "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). The court shall "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence." *Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 520 (1991). Consequently, motions for summary judgment impose a heavy burden on the moving party as it must be obvious that no material facts are in dispute and no rational trier of fact could find for the non-moving party. *See Miller v. F.D.I.C.*, 906 F.2d 972, 974 (4th Cir. 1990).

Nonetheless, the "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent entry of summary judgment. *Anderson,* 477 U.S. at 252. While any permissible inferences to be drawn from the underlying facts "must be viewed in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Anderson*, 477 U.S. at 249-50).

The court is required to liberally construe *pro se* complaints, such as the one filed by Plaintiff in this case. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. The court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), develop the plaintiff's legal theories for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

## III.   Discussion

### A. Exhaustion of Administrative Remedies

Defendants move for dismissal of Plaintiff's complaint on the basis that he has not exhausted his administrative remedies. (ECF Nos. 19, 21, 31). The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust administrative remedies prior to filing a civil rights complaint in federal court. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other

Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). Plaintiff was a West Virginia state prisoner at all relevant times. Therefore, he was required to exhaust his administrative remedies in accordance with the West Virginia Prisoner Litigation Reform Act, W. Va. Code § 25-1A-1, *et seq.*, prior to filing this federal lawsuit. *Freeland v. Ballard*, No. 2:14-CV-29445, 2017 WL 337997, at *3 (S.D.W. Va. Jan. 23, 2017).

For West Virginia state inmates, exhaustion of administrative remedies for claims involving, *inter alia*, food quality, health care, prison discipline, violence, sexual assault, or sexual abuse against an inmate all require a final decision from "the Commissioner of Corrections or the Commissioner's designee, or the Executive Director of the Regional Jail Authority, or the Director's designee." W. Va. Code §§ 25-1A-2, 25-1A-2a. WVDOC inmates are required to follow the three-level grievance procedure provided in Policy Directive 335.00 relating to any aspects of their confinement. W. Va. Code St. R. § 90-1-1; (ECF No. 21-1). The first step in the process is that an inmate must submit a completed written grievance form to his or her Unit Manager within fifteen days of the occurrence that caused the inmate to file the grievance. (ECF No. 21-1 at 6). If the grievance is rejected, denied, or the inmate does not receive a response within five days, the inmate may appeal to the Warden/Administrator within five days of delivery of the response or the date that the response was due. (*Id.* at 6-7). The inmate may then appeal the issue to the Commissioner of the WVDOC within five days after the inmate receives the Warden/Administrator's response or the date for the response has passed. (*Id.* at 8). Policy Directive 335.00 is clear that "[i]f a grievance has not been properly submitted through any level by an inmate, it shall be rejected." (*Id.* at 9). Further, a "rejected

grievance ***does not exhaust the grievance process or that step of the process.***" (*Id.*) (emphasis added).

As stated, exhaustion of remedies is mandatory and has limited exception. *Porter v. Nussle,* 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory. All available remedies must now be exhausted; those remedies need not meet federal standards, nor must they be plain, speedy, and effective. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.") (citations and internal quotation marks omitted). The purpose of the exhaustion requirement is twofold: first, "exhaustion protects administrative agency authority" by giving an agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court ... and it discourages disregard of the agency's procedures;" second, "exhaustion promotes efficiency," as claims "generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court" and sometimes "claims are settled at the administrative level, and in others, the proceedings before the agency convince the losing party not to pursue the matter in federal court." *Woodford v. Ngo*, 548 U.S. 81, 89, (2006) (citations and internal quotation marks omitted). Further, "even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." *Id.*

Recently, in *Ross v. Blake*, the Supreme Court of the United States ("Supreme Court") considered a case in which a Maryland state inmate filed a § 1983 complaint alleging that a correctional officer used excessive force against him and that another

officer failed to take action to protect him. *Ross*, 136 S. Ct. 1850, 1855 (2016). One of the officers raised the PLRA's exhaustion requirement as an affirmative defense, stating that the inmate brought suit without first following the prison's prescribed procedures for obtaining an administrative remedy. *Id.* The district court dismissed the lawsuit for lack of exhaustion, but the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") reversed the decision, stating that the PLRA's exhaustion requirement was "not absolute" and special circumstances could excuse exhaustion, such as when a prisoner reasonably, but mistakenly, believed that he had sufficiently exhausted his administrative remedies. *Id.* at 1856. Upon review, the Supreme Court explicitly rejected the Fourth Circuit's "special circumstances" exception, noting the exhaustion requirement in the PLRA is statutorily mandated and not amenable to judicially created exceptions. *Id.* The Supreme Court explained that the mandatory language of the PLRA meant that a court may not excuse a failure to exhaust, even to take special circumstances into account. *Id.*

Yet, the Supreme Court pointed out in *Ross* that the PLRA does contain one explicit exception: an inmate need not exhaust "unavailable" remedies. *Id.* at 1858. The Court identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide relief to aggrieved inmates." *Id.* Second, an administrative process is likewise unavailable when it is "so opaque" that "no ordinary prisoner can discern or navigate it." *Id.* Finally, an inmate need not exhaust administrative remedies when prison officials thwart the inmate's access to the

grievance procedure "through machination, misrepresentation, or intimidation." *Id.* at 1860. "[S]uch interference with an inmate's pursuit of relief renders the administrative process unavailable." *Id.*

In this case, the record before the Court includes the following relevant grievances:

### 1. Grievance No. 16-MDC-Q-522

On June 14, 2016, Plaintiff filed a grievance stating that he was in a car accident on November 20, 2015 and that "all that was done was an x-ray" to which Dr. Lye responded that he "could not fix what he could not see." (ECF Nos. 3-3 at 1-2, 21-2 at 1-2). Plaintiff stated in the grievance that Dr. Lye's response was unprofessional and that Plaintiff continued to wake up eight months later, after several medical requests, "feeling something isn't right." (*Id.* at 2). Plaintiff further argued that he was "being denied an MRI/CT scan to show the nerve & muscle damage" and felt that he was "being ignored and not treated professionally, nor provided adequate medical care." (*Id.*). Plaintiff requested "proper medical treatment for [his] neck & back." (*Id.* at 1). The Warden/Administrator rejected this grievance because there was no Unit Manager response indicated and it was untimely given the fact that the alleged occurrence took place on November 20, 2015, but the grievance was not filed until June 14, 2016. (*Id.*). Plaintiff states in the present federal action that he appealed this issue to the Commissioner via a letter, but did not receive a response. (ECF Nos. 32 at 1-2, 32-2 at 6-7).

### 2. Grievance 16-MDC-C-130

On September 20, 2016, Plaintiff filed a grievance stating that Gordon did not follow proper procedures at the scene of the accident on November 20, 2015 because he did not request medical attention and instead transported the inmates with "neck and back injuries" back to the prison for medical care. (ECF No. 3-3 at 4). This grievance was rejected because Plaintiff did not sign it and because "protocol was followed." (*Id.* at 4-5).

### 3. Grievance 16-MDC-B-91

On September 29, 2016, Plaintiff filed a grievance stating that he had ongoing problems with his back, as well as neck pain, and was receiving the "bare minimum treatment." (ECF No. 3-3 at 6). In the grievance, Plaintiff requested proper medical treatment, including an MRI to show muscle and nerve damage. (*Id.*). The Unit Manager's response provided the same day stated that Plaintiff

would see Dr. Garcia that day and Dr. Garcia would order a MRI if he deemed it medically appropriate. (*Id.*). The Warden/Administrator affirmed the Unit Manager's response and Plaintiff indicated on the grievance form that he appealed the issue to the Commissioner, but there is no response from the Commissioner included in the documentation provided by Plaintiff. (*Id.*).

### 4. Grievance No. 17-MDC-B-152

On June 22, 2017, Plaintiff filed a grievance stating that he had "been trying to obtain proper treatment for [his] neck and back" and had "paid numerous copays for visits and doctor evaluations with no help or treatment for [his] problem." (ECF Nos. 3-3 at 7, 21-4 at 3). Plaintiff further stated that every time that he saw Dr. Garcia, the physician acted like he had "no knowledge of the problem." (*Id.*). This grievance was accepted at the first and second level of review and the responses stated that Plaintiff had been evaluated by a licensed physician and provided prescription medication as part of his treatment plan. (*Id.*). Plaintiff was directed to place a sick call if he continued to have symptoms and to follow the directions of the medical staff. (*Id.*). The final appeal of this grievance to the Commissioner was rejected because there were two grievances included in the envelope, the other of which requested new white clothing because his was "worn out." (ECF No. 21-4 at 3-5).

### 5. Grievance No. 17-MDC-B-193

On September 10, 2017, Plaintiff filed a grievance stating that "Wexford Health Services" was not providing him adequate and prompt medical care. (ECF Nos. 32-2 at 1, 21-4 at 1-2). Plaintiff stated that he filed a sick call on September 5, 2017 and five days later he still had not been medically evaluated. (*Id.*). This grievance was fully exhausted and the Commissioner affirmed the denial of this grievance. (*Id.*). The stated reasons were that "medical holds sick call(s) 7 days a week," but inmates in segregation need "escorts, which are not always available." (*Id.*). In any event, it was stated that a "physician evaluation [was] not required for [Plaintiff's] complaint and a nursing protocol was done on 9/6/17." (*Id.*). The Warden/Administrator further stated that Plaintiff refused to see a doctor on September 15, 2017. (*Id.*).

Based upon the above, Plaintiff very clearly did not exhaust his administrative remedies regarding the claims that he asserts against Gordon, Kendrick, and Ballard in this action. Plaintiff's complaint alleges that the seat belts in the van that he was riding in at the time of the accident were faulty and Gordon, the driver, failed to do a

11

safety check to discover the faulty seat belts, as he was required to do by policy. (ECF Nos. 3 at 5-6, 32 at 2). Furthermore, Plaintiff alleges that both Gordon and Kendrick denied Plaintiff immediate medical care and failed to follow WVDOC protocol after the accident by transporting Plaintiff back to the prison for medical evaluation instead of sending him to the hospital. (*Id.*). Plaintiff's claim against Ballard alleges that Ballard "was notified of his officer's negligence and [Plaintiff's] medical issue," but "no help or relief was ever received." (ECF No. 3 at 7). The only grievance which Plaintiff filed concerning any of the above claims was Grievance 16-MDC-C-130, filed ten months after the accident, which stated that Gordon failed to follow proper procedures at the accident scene by transporting inmates with "neck and back injuries" back to the prison for medical care. (ECF No. 3-3 at 4-5). This grievance was rejected; therefore, it did not exhaust Plaintiff's claims against Gordon regarding the alleged delay or denial of medical care. Moreover, Plaintiff did not file any grievance stating that Gordon failed to check faulty seatbelts or any grievances whatsoever related to Kendrick or Ballard.

The undersigned is cognizant of the fact that a grievance concerning Gordon and Kendrick's alleged failure to follow proper protocol on the day of the November 20, 2015 accident or Ballard's alleged failure to render assistance to Plaintiff when notified of his officers' "negligence" or Plaintiff's medical issues, if filed now, might be rejected by the WVDOC as untimely. Policy Directive 335.00 requires an inmate to file a grievance within 15 days of the occurrence that caused him to file a grievance. (ECF No. 21-1 at 6). However, there is no futility exception to the PLRA exhaustion requirement, and Plaintiff has not argued or demonstrated that an administrative remedy is "unavailable" to him as the term is understood under federal law. *Morris v. W. Reg'l Jail*, No. 3:17-CV-01148, 2017 WL 4080698, at *3 (S.D.W. Va. Aug. 22, 2017),

*report and recommendation adopted,* 2017 WL 4078129 (S.D.W. Va. Sept. 14, 2017) (The "Supreme Court of the United States has repeatedly held that courts may not read futility or other exceptions into the PLRA that are not part of its textual mandate.") (citing *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016) (holding that "[m]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion."); *Booth v. Churner,* 532 U.S. 741, n.6 (2001) ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."). Therefore Plaintiff's claims against Gordon, Kendrick, and Ballard should be dismissed without prejudice under the PLRA.

As to Plaintiff's claims against Drs. Lye and Garcia, Plaintiff asserts that he exhausted his administrative remedies via Grievance Nos. 16-MDC-Q-522 and 17-MDC-B-193. (ECF No. 32 at 1). As noted, Grievance No. 16-MDC-Q-522, filed on June 14, 2016, stated that Plaintiff was in a car accident on November 20, 2015 and "all that was done was an x-ray" to which Dr. Lye responded that he "could not fix what he could not see." (ECF Nos. 3-3 at 1-2, 21-2 at 1-2). The grievance further stated that Dr. Lye's response was unprofessional and that Plaintiff continued to wake up eight months later, after several medical requests, "feeling something isn't right." (*Id.* at 2). Plaintiff's grievance asserted that he was "being denied an MRI/CT scan to show the nerve & muscle damage" and felt that he was "being ignored and not treated professionally, nor provided adequate medical care." (*Id.*). Plaintiff requested "proper medical treatment for [his] neck & back." (*Id.* at 1). The Warden/Administrator rejected this grievance because there was no Unit Manager response indicated and it was untimely given the fact that the alleged occurrence occurred on November 20, 2015, but the grievance was not filed until June 14, 2016. (*Id.*). Plaintiff states that he appealed this issue to the

Commissioner via a letter, but did not receive a response. (ECF Nos. 32 at 1-2, 32-2 at 6-7). Plaintiff indicates that this grievance exhausted his administrative remedies with respect to his medical care claims raised in this action because the Commissioner never responded, which allowed Plaintiff to "move forward with legal matters." (ECF No. 32 at 1-2). However, as stated in Policy Directive 335.00, a rejected grievance does not exhaust an inmate's administrative remedies. (ECF No. 21-1 at 9). In this case, Grievance No. 16-MDC-Q-522 was because Plaintiff did not follow Policy Directive 335.00 by filing the grievance in the prescribed period or first presenting his complaint to the Unit Manager. Therefore, Grievance Nos. 16-MDC-Q-522 did not exhaust Plaintiff's administrative remedies with respect to his medical care claims asserted in this action.

Plaintiff also asserts that his administrative remedies were exhausted because Grievance No. 17-MDC-B-193 "was properly filed and exhausted in accordance with Policy Directive 335.00." (ECF No. 32 at 1). However, this grievance concerned a sick call that Plaintiff filed on September 5, 2017 and the fact that "Wexford Health Services" was not providing "adequate and prompt medical care" as he had no diagnostics or vitals taken or an evaluation by a physician. (ECF No. 21-4 at 1-2). This grievance did not refer to Drs. Lye or Garcia by name or indicate in any manner that it related to his medical care concerning the accident on November 20, 2015, which is the subject of Plaintiff's § 1983 complaint. Therefore, Grievance No. 17-MDC-B-193 also did not exhaust Plaintiff's administrative remedies with respect to his medical care claims asserted in this action.

Plaintiff filed two other grievances alleging improper medical care. Grievance 16-MDC-B-91, filed on September 29, 2016, asserted that Plaintiff was receiving "bare

minimum [medical] treatment" for his back and neck pain and requested a MRI "to show muscle and nerve damage." (ECF No. 3-3 at 6). At the first level of review, the Unit Manager responded that Plaintiff would see Dr. Garcia that day and he would order a MRI if he deemed it medically appropriate. (*Id.*). The Warden/Administrator affirmed the Unit Manager's response and Plaintiff indicated on the grievance form that he appealed the response to the Commissioner. (*Id.*).

Plaintiff did not refer to Drs. Lye or Garcia or Ballard, the defendants in this action, by name in Grievance 16-MDC-B-91, but the grievance arguably did put the WVDOC on notice of Plaintiff's claim that he was not receiving proper medical care regarding his back and neck pain and wanted a MRI. "It is well settled that a grievance does not have to mention a defendant by name as long as the grievance gives the defendant fair notice of the claim." *Pickens v. Lewis*, No. 1:15-CV-275-FDW, 2017 WL 3277121, at *3 (W.D.N.C. Aug. 1, 2017) (citing *Moore v. Bennette*, 517 F.3d 717, 729 (4th Cir. 2008)). However, Plaintiff did not offer any evidence that Grievance 16-MDC-B-91 exhausted his administrative remedies. "[W]hether an administrative remedy has been exhausted for purposes of the PLRA is a question of law to be determined by the judge" and "disputed questions of fact are resolved by the court." *Murray v. Matheney*, No. 2:13-CV-15798, 2017 WL 4684746, at *4 (S.D.W. Va. Oct. 18, 2017) (citation omitted). "Once the defendant has made a threshold showing of failure to exhaust, the burden of showing that administrative remedies were unavailable falls to the plaintiff." *Id.* In this case, Defendant Kendrick provided a sworn affidavit from Brandon Armstrong, the WVDOC Inmate Grievance Coordinator, who is the individual responsible for receiving, reviewing, and responding on the Commissioner's behalf to all inmate grievances and appeals of prison disciplinary matters. (ECF No. 21-3).

15

According to Mr. Armstrong, inmate grievances tendered to the Commissioner are logged and included in the inmate's central file. (*Id.*). As of March 27, 2018, Mr. Armstrong did not find a record of Grievance 16-MDC-B-91 in Plaintiff's inmate grievance log. (*Id.*). Therefore, Defendants have met their burden of proving that Plaintiff failed to exhaust this grievance and the inquiry turns to whether Plaintiff met his burden of demonstrating that an administrative remedy was unavailable. *Murray,* 2017 WL 4684746, at *4 (S.D.W. Va. Oct. 18, 2017). Plaintiff has not met such burden. When faced with Defendants' argument that he did not exhaust his administrative remedies, Plaintiff did not offer any argument or evidence that Grievance 16-MDC-B-91 exhausted his administrative remedies or that an administrative remedy was unavailable to him. (ECF No. 32). Therefore, Grievance 16-MDC-B-91 likewise did not exhaust Plaintiff's administrative remedies regarding the medical claims raised in this action.

Plaintiff's other grievance regarding his medical care, Grievance No. 17-MDC-B-152, filed on June 22, 2017, asserted that Plaintiff had "been trying to obtain proper treatment for [his] neck and back" and had "paid numerous copays for visits and doctor evaluations with no help or treatment for [his] problem." (ECF Nos. 3-3 at 7, 21-4 at 3). Plaintiff further stated that every time that he saw Dr. Garcia, the physician acted like he had "no knowledge of the problem." (*Id.*). This grievance was accepted at the first and second level of review and the responses stated that Plaintiff had been evaluated by a licensed physician and provided prescription medication as part of his treatment plan. (*Id.*). Plaintiff was directed to place a sick call if he continued to have symptoms and to follow the directions of the medical staff. (*Id.*). The final appeal of this grievance to the Commissioner was rejected because there were two grievances

included in the envelope, the other of which requested new white clothing because Plaintiff's was "worn out." (ECF No. 21-4 at 3-5). As noted, a rejected grievance does not exhaust an inmate's administrative remedies.

Given that Plaintiff has not exhausted his administrative remedies with respect to any of the claims raised in this action, nor has he argued or presented any evidence that an administrative remedy is unavailable to him, the undersigned **FINDS** that Plaintiff's complaint must be dismissed for lack of exhaustion.

### B. Failure to State a Claim

Drs. Lye and Garcia also move to dismiss Plaintiff's claims on the basis that Plaintiff does not allege sufficient facts that, if proven, support a viable claim under the Eighth Amendment. (ECF Nos. 19, 20). In order to maintain a *prima facie* case under 42 U.S.C. § 1983, a plaintiff must show through factual allegations that he was (1) deprived of a right secured by the Constitution or laws of the United States, and that (2) the deprivation was committed by a person acting under color of state law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment, including the "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173, (1976). To comply with the Eighth Amendment, each state must provide its sentenced prisoners with "adequate food, clothing, shelter, and medical care ...." *Estelle v. Gamble,* 429 U.S. 97, 103, (1976). A prison official violates the Eighth Amendment when he responds to a prisoner's serious medical need with deliberate indifference. *Estelle,* 429 U.S. at 104; *Farmer v. Brennan,* 511 U.S. 825, 834, (1994).

To state a cognizable Eighth Amendment claim, an inmate must meet two prongs, one objective and one subjective. Under the objective prong, the inmate must demonstrate the existence of a medical condition or need that is objectively serious. *Estelle,* 429 U.S. at 104. A medical condition is serious under the Eighth Amendment when it has been diagnosed by a physician as mandating treatment, or is so obvious that even a lay person would understand that medical attention is necessary. *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990). A serious medical need may also be shown by the presence of a medical condition that significantly affects the prisoner's daily activities or causes chronic and substantial pain. *McGuckin v. Smith,* 974 F.2d 1050, 1059–60 (9th Cir. 1992); *see also Adams v. Southwest Virginia Regional Jail Authority*, 524 Fed. Appx. 899, 900-01 (4th Cir. 2013). Also under the objective prong, "a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions," *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (quoting *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993)), "or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 33–35 (1993)).

Under the subjective prong, the inmate must show that the defendant subjectively responded with deliberate indifference to the inmate's serious medical need. *Wilson v. Seiter,* 501 U.S. 294, 297–99, (1991). Not every refusal or delay of medical care will translate into a "constitutional liability" for prison officials. *Farmer,* 511 U.S. at 834 "[D]eliberate indifference entails something more than mere negligence ... [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835.

18

> Deliberate indifference may be demonstrated by either actual intent or
> reckless disregard. *See Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985).
> A defendant acts recklessly by disregarding a substantial risk of danger
> that is either known to the defendant or which would be apparent to a
> reasonable person in the defendant's position. *See Id.* Nevertheless,
> mere negligence or malpractice does not violate the Eighth Amendment.
> *See Estelle*, 429 U.S. at 106.

*Miltier*, *supra* at 851-852. "True subjective recklessness requires knowledge both of

the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v.*

*Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). If the requisite subjective knowledge is

established, an official may still avoid liability "if [he] responded reasonably to the risk,

even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. An inmate is not

entitled to unqualified access to health care, and treatment may be limited to what is

medically necessary and not "that which may be considered merely desirable" to the

inmate. *Bowring v. Godwin,* 551 F.2d 44, 47-48 (4th Cir. 1977).

Plaintiff alleges that Dr. Lye did not see him until November 25, 2015, which

was five days after the motor vehicle accident. (ECF No. 32 at 2). Plaintiff's handwritten

notes attached to his complaint state that x-rays were taken of Plaintiff on November

23, 2015. Dr. Lye reviewed the x-rays with Plaintiff on November 25, 2015 and advised

him that there were no fractures. (ECF Nos. 3 at 6, 3-2 at 1). Dr. Lye allegedly told

Plaintiff that he could not see nerve and muscle damage on an x-ray, that he could not

fix what he could not see, and that Plaintiff would be sore for several months. (*Id.*).

Plaintiff states that Dr. Lye should have referred him to a specialist or ordered a MRI

or CT scan. (*Id.*).

A "delay in treatment may constitute deliberate indifference if the delay

exacerbated the injury or unnecessarily prolonged an inmate's pain." *Abraham v.*

*McDonald*, 493 F. App'x 465, 466 (4th Cir. 2012) (citations omitted). However, a mere

delay in medical treatment does not give rise to a constitutional violation, but rather, there must be some substantial harm to the inmate. *Williams v. Miles*, No. 2:08-0042, 2009 WL 2044679, at *2 (S.D.W. Va. July 7, 2009); *Carter v. Ulep*, No. 1:13CV1425 LMB/JFA, 2015 WL 539562, at *5 (E.D. Va. Feb. 6, 2015) ("The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain.") (citations omitted); *Estepp v. McKeen*, No. 2:15-CV-57, 2018 WL 2439245, at *2 (N.D.W. Va. May 4, 2018), *report and recommendation adopted*, 2018 WL 2437546 (N.D.W. Va. May 30, 2018).

In this case, construing Plaintiff's allegations as true and even assuming that the five-day delay in treatment was attributable to Dr. Lye, Plaintiff does not allege sufficient facts to show that the delay exacerbated an injury or unnecessarily prolonged his pain. Plaintiff states that he was the passenger in what was described as a minor motor vehicle accident on November 20, 2015. (ECF No. 3-1 at 1, 2, 6). He complained of pain, was examined by a nurse, and given ibuprofen until he saw Dr. Lye five days later. (ECF Nos. 3 at 6, 3-2 at 1). X-rays were taken three days after the accident and Dr. Lye explained to Plaintiff that he had no fractures. (*Id.*). Plaintiff does not allege sufficient facts to show that the five-day delay in receiving medical treatment constituted deliberate indifference by Dr. Lye.

Plaintiff argues that Dr. Lye should have referred him to a specialist and/or ordered a MRI or CT scan. However, Plaintiff expresses nothing more than a disagreement with the course of treatment that Dr. Lye provided, which does not state a claim of constitutional significance. *Jackson v. Sampson*, 536 F. App'x 356, 357–58 (4th Cir. 2013) ("Jackson's dispute with Defendants' decision not to authorize the particular treatment program he requested, and the subsequent course of monitoring

he received, amounts to a disagreement with his course of treatment that is not cognizable under the Eighth Amendment."); *Sears v. Price*, No. 5:11-CT-3208-FL, 2014 WL 1266830, at *16 (E.D.N.C. Mar. 26, 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)) ("[T]he question of whether an x-ray-or additional diagnostic techniques or forms of treatment-is indicated is a classic example of a matter for medical judgment. A medical decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice.").

Plaintiff further alleges that Dr. Garcia, who began providing Plaintiff's medical care when he was transferred to another facility on June 17, 2016, ignored his complaints that he was still in pain and that ibuprofen was not helping. (ECF No. 3 at 7). Plaintiff states that every time he saw Dr. Garcia, "no further treatment or recommendations were made." (*Id.*). Plaintiff contends that Dr. Garcia denied him "access to healthcare staff qualified to address [his] problem," such as a MRI, CT scan, or referral to a specialist. (*Id.*). However, Plaintiff's handwritten notes attached to his complaint admit that he saw a physician on September 29, 2016 and was given Naproxen 500 mg. (ECF No. 3-2 at 2).

Again, Plaintiff's claims against Dr. Garcia allege only a disagreement with the treatment plan provided by the physician, as opposed to deliberate indifference to a serious medical need. According to Plaintiff's complaint and attached exhibits, Plaintiff was in a minor motor vehicle accident, given ibuprofen, and x-rays were taken, which showed no fractures. Plaintiff was advised he could feel sore for months. When he was transferred to another facility, he continued to complain of pain, saw Dr. Garcia, and was prescribed Naproxen. Plaintiff does not allege any facts sufficient to show that Dr. Garcia violated his constitutional rights by not ordering a MRI or CT scan, referring

21

Plaintiff to a specialist, or following a different treatment plan.

"[S]ociety does not expect that prisoners will have unqualified access to health care;" thus to implicate the protections of the Eighth Amendment, the deliberate indifference must be sufficiently serious. *Shepard v. Slagle*, No. 1:14-CV-30-FDW, 2014 WL 3102026, at *2 (W.D.N.C. July 7, 2014), *aff'd,* 589 F. App'x 122 (4th Cir. 2014) (citing *Hudson v. McMillian,* 503 U.S. 1, 9 (1992)). Therefore, to "establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* (citing *Miltier v. Beorn,* 896 F.2d 848, 851 (4th Cir.1990), *overruled in part on other grounds by, Farmer v. Brennan,* 511 U.S. 825(1994)).

While Plaintiff may have disagreed with the course of treatment provided by Drs. Lye and Garcia, he does not allege facts to potentially invoke the high threshold of deliberate indifference by such physicians merely because, after reviewing his negative x-ray and treating him with pain medication, the physicians did not elect to order additional testing, refer him to a specialist, or provide different treatment. *See, e.g., Johnson v. Proctor*, No. 3:15-CV-53, 2016 WL 165020, at *6-7 (N.D.W. Va. Jan. 14, 2016) (Finding that the inmate's allegations that the physician made no attempts to diagnose his head injury, provide treatment other than Tylenol, or order a MRI or CT scan were insufficient to state a claim upon which relief could be granted under the Eighth Amendment); *Langley v. Huntington Police Dept.*, No. 3:17-CV-03520, 2018 WL 652866, at *9 (S.D.W. Va. Jan. 9, 2018), *report and recommendation adopted*, 2018 WL 650208 (S.D.W. Va. Jan. 31, 2018) (Finding that the inmate's deliberate indifference claim based upon health care providers' alleged "superficial examination"

and refusal to arrange for the inmate's transfer to an outside hospital for an MRI or CT scan should be dismissed); *Jackson v. Sampson*, 536 F. App'x 356, 357–58 (4th Cir. 2013) ("Jackson's dispute with Defendants' decision not to authorize the particular treatment program he requested, and the subsequent course of monitoring he received, amounts to a disagreement with his course of treatment that is not cognizable under the Eighth Amendment."); *Shepard*, 2014 WL 3102026, at *2 (Finding that a Plaintiff's allegation that he was not provided a new medicine to address his Hepatitis-C condition amounted to "a disagreement with the method and course of his medical treatment" that was "insufficient to support a finding of deliberate indifference in a § 1983 action.").

Therefore, the undersigned **FINDS** that Plaintiff additionally fails to state a claim upon relief may be granted against Drs. Lye and Garcia.

### IV.  <u>Proposal and Recommendations</u>

For the reasons stated, the undersigned respectfully **PROPOSES** that the presiding District Judge confirm and accept the foregoing findings and **RECOMMENDS** that the presiding District Judge **GRANT** Defendants' motions to dismiss/motion for summary judgment and motion to join the motion to dismiss, (ECF Nos. 19, 21, 31); **DENY** Plaintiff's motion to deny the motion to dismiss, (ECF No. 32); and **DISMISS** the complaint, (ECF No. 3), against Gordon, Kendrick and Ballard **without prejudice** for failure to exhaust administrative remedies and **with prejudice** against Drs. Lye and Garcia for failure to exhaust and failure to state a claim upon which relief can be granted.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver,

Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Copenhaver, Magistrate Judge Eifert, counsel of record, and any unrepresented party.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff and counsel of record.

**FILED:** June 15, 2018

Cheryl A. Eifert
United States Magistrate Judge

24